Celia McGuinness (SBN 159420)
Liza Cristol-Deman (SBN 190516)
Francesca Simon (SBN 359441)
McGUINNESS LAW GROUP, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile: (510) 439-2951
Email: cmcguinness@mcguinness-legal.com
lcristoldeman@mcguinness-legal.com
fsimon@mcguinness-legal.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OFELIA YAP and JOEL YAP, JR.,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDPEN HOUSING CORP.; MIDPEN PROPERTY MANAGEMENT CORP.; and MP SONORA COURT ASSOCIATES, L.P.;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF; DEMAND FOR TRIAL BY JURY** |

## I. INTRODUCTION

1. This is a housing discrimination case. Plaintiffs Ofelia Yap and Joel Yap, Jr., mother and adult son, are residents of the apartment building located at 1178 Sonora Court in Sunnyvale, California, which is known as Ira D. Hall Square ("Hall Square"). Defendants own and manage Hall Square. Ofelia Yap is currently receiving treatment for cancer and requires the use of mobility aids, including a cane, walker, or wheelchair, to ambulate. She is a person with disabilities. Joel Yap lives with and cares for his mother, including assisting with activities of daily living and handling many needs related to her medical condition. Because Ms. Yap no

longer drives, Joel Yap uses his car to drive her to and from all medical appointments and other locations as needed.

2. For the first seven months of their tenancy at Hall Square, Ofelia Yap and Joel Yap, her means of transportation, had no place to park other than the street despite an abundance of unassigned parking spaces in the garage and approximately eleven ADA spaces that are intended to be accessible to any vehicle displaying a disabled placard or license plate. Defendants refused to respond to their request for reasonable accommodations for more than five months, then denied their request by claiming that Mr. Yap is not entitled to a reserved parking space because he is a live-in caregiver rather than a "tenant." After counsel became involved, Defendants permitted the Yaps to access the garage to park in an open ADA space but still refused to grant them a reserved parking space. This behavior constitutes intentional disability discrimination under federal and state law.

3. Defendants' conduct constitutes unlawful discrimination against people with disabilities.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiffs' state law claims since those state law claims arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper because the claims alleged in this complaint arose from unlawful conduct occurring in Santa Clara County, California, where the real property at the center of this action is located.

## III. INTRADISTRICT ASSIGNMENT

6. Pursuant to Civil L.R. 3-2(d), assignment to the San Jose Division is proper here because the action arose in Santa Clara County.

## IV. PARTIES

7. Plaintiff Ofelia Yap is 70 years old. She has been a tenant in unit 625 at the Ira D.

Hall Square Apartments since the building opened in December 2025. Her husband, who also has disabilities, is a co-tenant in the unit.

8. Ms. Yap has been undergoing treatment for metastatic cancer since approximately 2024. She has had three major surgeries since her diagnosis and has undergone numerous rounds of chemotherapy and other treatments. She also has peripheral neuropathy. She is medically frail and fragile. She cannot walk without assistance. She uses a cane, walker, or wheelchair to ambulate.

9. Ms. Yap is a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. She has disabilities and medical conditions that substantially limit major life activities, including walking.

10. Joel Yap, Jr., is Ms. Yap's adult son. He is his mother's caregiver as part of an In-Home Supportive Services (IHSS) agreement. IHSS pays caregivers to help seniors and people with disabilities like Ofelia Yap with their activities of daily living. Mr. Yap also provides paramedical services for his mother in their home, including medication infusions.

11. Each Plaintiff has been injured by Defendants' discriminatory housing practices as set forth below. Accordingly, each is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (i).

12. MidPen Housing Corporation is the developer of Hall Square. MidPen Housing Corporation is a California nonprofit corporation with a primary address in Foster City, California. It is licensed by the California Department of Real Estate.

13. MP Sonora Court Associates LP is a California limited partnership that owns Hall Square. The general partner of MP Sonora Court Associates LP is MP Sonora Court LLC.

14. MidPen Property Management Corporation is the management company for Hall Square. It is licensed by the California Department of Real Estate.

15. Collectively, MidPen Housing Corporation, MP Sonora Court Associates LP, and MidPen Property Management Corporation are referred to herein as "MidPen" or "Defendants."

16. The Ira D. Hall Square Apartments ("Hall Square") contain approximately 176 dwelling units that are rented to members of the public. Hall Square is reserved for people with low to extremely low incomes. Hall Square and all apartment units within it constitute dwellings under the Fair Housing Act, 42 U.S.C. § 3602 (b), and housing accommodations within the meaning of FEHA, Cal. Gov. Code § 12927 (d).

17. MidPen was awarded tax credits by the Low-Income Housing Tax Credit Program for the development of Hall Square. MidPen also received other financial incentives and benefits from other government entities to develop Hall Square, including over $14 million from the City of Sunnyvale.

18. MidPen and Hall Square constitute business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51.

19. In doing the acts alleged herein, each defendant was acting within the course and scope of its actual or apparent authority pursuant to an agency relationship. Plaintiffs are further informed and believe, and thereon allege, that each Defendant herein, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to the other defendant. Each defendant is directly or vicariously liable for the unlawful housing practices alleged in this complaint for the defendant's own conduct, or for failing to take prompt action to correct and end an unlawful housing practice by that defendant's employee or agent, where the defendant knew or should have known of the unlawful conduct.

20. Each defendant is also vicariously liable for unlawful conduct by the defendant's agent or employee, regardless of whether the defendant knew or should have known of the conduct that resulted in the unlawful housing practice, consistent with agency law.

## V. FACTUAL ALLEGATIONS

21. When Ms. Yap and her husband applied to rent at Hall Square in August 2025, Ms. Yap indicated on her application that she had a disability and required a live-in aide.

22. In October 2025, before moving into the unit, Ms. Yap provided Defendants with a letter from her physician stating that she has mobility limitations that require the use of assistive

devices, including a cane for daily ambulation and a walker or wheelchair for longer distances or during periods of "increased physical limitation."

23. Ms. Yap, her husband, and Joel Yap, Jr., moved into apartment 625 at Hall Square on or about December 19, 2025 and attended a mandatory, MidPen orientation session for new residents on the same date.

24. During the orientation session on or about December 19, 2025, MidPen provided information about reserving a parking space in the garage. There was no cost for the parking space. At the time, Ms. Yap had access to a car that belonged to a family friend but did not have the documentation with her that MidPen required to reserve a parking space, such as registration and insurance. MidPen told her that she could provide the documentation later to reserve a parking space.

25. On January 5, 2026, Joel Yap, Jr., emailed Defendants to ask about obtaining a parking space in the garage on behalf of his mother.

26. On January 7, 2026, Ms. Yap provided proof of car insurance to the Hall Square management office. MidPen management stated that Ms. Yap would be placed on a waiting list for a parking space. The Yaps were confused about being placed on a waiting list, because they were among the first tenants in the building. Most units in the building remained unoccupied in January, and the parking garage appeared to have many open spaces.

27. On January 30, 2026, MidPen informed Ms. Yap's daughter that she could not reserve a parking space in the garage unless the car was registered to her.

28. On or about February 3, 2026, Ofelia Yap completed MidPen's form seeking two reasonable accommodations: (1) to allow her son Joel to reside in her unit as a live-in caregiver, and (2) "an assigned parking space close to [the] elevator for wheelchair access to medical appointments." This form was hand-delivered to the management office onsite and also sent to MidPen via email on February 3, 2026.

29. When Ms. Yap submitted the form requesting two reasonable accommodations, she also submitted two medical forms – one supporting each accommodation – completed by her oncologist, Alison Chang, M.D. One form declared that the requested accommodation of a live-

in caregiver was necessary for Ms. Yap to have an equal opportunity to use and enjoy the dwelling. The form also declared that Ms. Yap needed assistance to ambulate. The second form declared that Ms. Yap needed "closer parking to the building entrance and exit," which was also necessary for Ms. Yap to have an equal opportunity to use and enjoy the dwelling. Dr. Chang signed each form under penalty of perjury.

30. Joel Yap emailed the reasonable accommodation form and physician verification forms to MidPen on February 3, 2026. In his email, he stated that Ms. Yap had no assigned parking spot and relied on street parking. His email added, "[a]s a documented high fall risk, navigating road hazards is a significant safety concern. This vehicle is a medical necessity for her frequent medical transport and access to treatments." He included a photo of Ms. Yap attempting to exit the passenger side of the car with her cane in hand. There is no sidewalk. Rather, next to the curb is a small hill covered in tan bark, which separates Hall Square from the street. In addition, his email requested that MidPen prioritize Ms. Yap's request for a reserved parking space in the garage and waive any requirement that the vehicle be registered in her name.

31. On or about March 2, 2026, the Yaps received a letter dated February 25, 2026, from Lauren MacKinlay, MidPen's Regulatory Compliance and Inspection Specialist, approving their request to allow Joel Yap, Jr. to reside in the unit as a caregiver. She did not address their second request for reasonable accommodation.

32. On March 10, 2026, Joel Yap left a voicemail for Ms. MacKinlay seeking an answer to his mother's request for a reserved parking space as a reasonable accommodation. He did not receive any return calls.

33. On March 13, 2026, Mr. Yap emailed Ms. MacKinlay at MidPen to request an update about his mother's request for a reasonable accommodation for a parking spot. He did not receive any response.

34. On March 17, 2026, Mr. Yap emailed the rental office at Hall Square to request an update about his mother's request for a reasonable accommodation for a parking spot. He did not receive any response.

35. Plaintiffs are informed and believe, and allege thereon, that there were unreserved

parking spaces available for Ms. Yap in the garage when she made her request for a reasonable accommodation and for the months that her request remained unanswered. According to a notice delivered to all residents on March 17, 2026, Hall Square was "approximately 72% occupied."

36. On or about March 16, 2026, the Yaps contacted a local nonprofit housing organization, Project Sentinel, to seek assistance in resolving their request for a parking space in the garage as a reasonable accommodation.

37. On March 18, 2026, Ms. Yap submitted a formal grievance to MidPen through its website based on MidPen's constructive denial of her requested accommodation for a reserved parking space in the garage.

38. On March 23, 2026, Mr. Yap received an email from Ms. MacKinlay in response to his email dated March 13 requesting an update on his mother's request for a parking space as a reasonable accommodation. Ms. MacKinlay's email stated, "this is still pending review."

39. Mr. Yap requested an estimated timeline for the review of his mother's reasonable accommodation request many times, including via email on March 24 and March 26, 2026. Defendants did not respond.

40. On or about March 24, 2026, MidPen submitted a request to Ms. Yap's physician regarding Ms. Yap's request for a reasonable accommodation. MidPen's request suggested that Ms. Yap use the loading zone on the side of the building to get in and out of the car, which could be parked off site. MidPen did not notify the Yaps before submitting the request to Ms. Yap's physician. Nor did MidPen consult with Ms. Yap to ask her whether she believed that the loading zone would adequately serve her disability-related needs. The Yaps learned of MidPen's communication with Ms. Yap's physician one month later during a medical appointment.

41. On or about March 26, 2026, Isaac Pimentel, a Fair Housing Coordinator at Project Sentinel, emailed Defendants another request for a reasonable accommodation on behalf of the Yaps. Mr. Pimentel requested a parking space close to the Yaps' unit because of Ms. Yap's disability. Mr. Pimentel is not an attorney, and his letter did not identify him as counsel. Project Sentinel did not receive any response to this letter.

42. In early April 2026, Ms. Yap began using a wheelchair more often and stopped

driving because of a fall. She began relying exclusively on her son and IHSS caregiver to drive her to medical appointments and other locations as needed.

43. On or about April 13, 2026, Mr. Yap emailed Defendants to notify them that Ms. Yap now used a wheelchair and could no longer drive the car that she had previously requested to park in the garage as a reasonable accommodation. Mr. Yap stated that he now provided all of her transportation in his car and needed a parking space in the garage to "safely load and unload her wheelchair and get her to medical appointments without physical risk." He attached copies of his car registration, insurance, the permanent DMV-issued placard that he used when driving his mother, and an updated letter from Dr. Chang verifying that his mother's mobility had "significantly declined." Dr. Chang's letter also stated that Mr. Yap was his mother's sole transportation provider, and that "close and reliable access to designated accessible parking is medically necessary to ensure the patient's safety, independence, and ability to attend medical appointments and daily activities." Dr. Chang closed by stating, "[i]n my professional opinion, assigning accessible parking is a reasonable and necessary accommodation related to her disability. This accommodation will significantly reduce physical strain, minimize fall risk, and support her health and well-being."

44. In the same email dated April 13, 2026, Mr. Yap also requested "temporary access to a garage key" so that they could park in an ADA space while their request for an accommodation was under review. They did not receive any response from Defendants.

45. On or about April 20, 2026, Ms. Yap's physician responded to MidPen's March 24th request for additional information. The physician, Dr. Chang, stated that MidPen's proposal to use the loading zone did not meet Ms. Yap's disability-related needs.

46. On or about April 21, 2026, Ms. MacKinlay emailed the Yaps and stated that she had received additional documents that they submitted and would forward them to "our directors" for review.

47. On or about April 24, 2026, Project Sentinel's staff member, Isaac Pimentel, sent a second letter via email to Defendants requesting a reasonable accommodation on behalf of Ms. Yap that would enable her son and caregiver, Joel Yap, to park his car in the garage. He also

requested that MidPen grant the Yaps immediate access to the garage so that they could park in an ADA space while the accommodation request was pending. The letter included copies of the car registration, insurance, the handicapped placard that he used when driving his mother, and the letter from Dr. Chang that had been provided to defendants by Mr. Yap 11 days earlier.

48. On April 25, 2026, Mr. Yap emailed MidPen seeking an update on his mother's request for a reasonable accommodation, submitted on February 3, 2026. He also asked for an update on his request dated April 13, 2026, requesting temporary access to the garage while the request was under review. Mr. Yap received no response.

49. On April 28, 2026, Mr. Yap sent another email seeking an update from MidPen about the request for reasonable accommodation and garage access.

50. On April 29, 2026, MidPen emailed Mr. Yap stating that they would not engage in any further communication directly because "you are being represented by Project Sentinel." MidPen stated that all communication would go "through our attorneys" and that no updates would be provided to the Yaps.

51. On May 6, 2026, an attorney for MidPen sent a letter to Mr. Pimentel at Project Sentinel denying the Yaps' request for a reasonable accommodation, claiming that there was no nexus between Ms. Yap's disability and the need for her caregiver to park their car in the garage. The letter acknowledged that Ms. Yap relied on her son and caregiver to transport her and suggested that Mr. Yap park his car off site, then use the loading zone to pick up and drop off Ms. Yap. This was the same suggestion that Ms. Yap's physician had previously rejected because it would be unsafe for Ms. Yap.

52. On May 20, 2026, Mr. Pimentel emailed a letter to defendants renewing Ofelia Yap's request for a reasonable accommodation and attaching a new letter from Dr. Chang dated May 18, 2026. Dr. Chang's letter stated that Ms. Yap had "severe, permanent, mobility impairments that limit her ability to walk, maintain balance, and safely ambulate." It also stated that she cannot be left unattended "due to high fall risk." The letter added that her caregiver's vehicle functioned as "an essential mobility aid." Dr. Chang reiterated that dropping Ms. Yap off in the loading zone was not a safe or feasible alternative to a parking space in the garage.

53. Neither Project Sentinel nor the Yaps received any response to their letter dated May 20, 2026. The Yaps then retained counsel.

54. On June 29, 2026, the Yaps' counsel sent a letter to MidPen's counsel, Andrew VanSlyke, requesting that MidPen grant a reasonable accommodation to the Yaps by providing them with a parking space in the garage where Mr. Yap can park his car. This was the ***sixth*** request made by or on behalf of the Yaps seeking a parking space as a reasonable accommodation for Ms. Yap's disability.

55. On July 2, 2026, Mr. VanSlyke responded to counsel's letter on behalf of Defendants. The letter agreed to permit the Yaps to park in the garage in an unassigned, ADA parking space that is available to anyone with a handicapped placard, and according to Mr. VanSlyke, "legally required to be publicly accessible." The letter stated that MidPen rejected the Yaps' request for an assigned parking space in the garage because Mr. Yap is a live-in aide rather than "a tenant."

56. On July 3, 2026, the Yaps, through counsel, communicated that they would accept the offer to park in an unassigned ADA space on a trial basis, but would request an assigned parking space if the ADA spaces proved unavailable when the Yaps needed one. Counsel requested that Defendants provide the Yaps with a remote control to access the garage as soon as possible.

57. For the next 11 days, the Yaps remained unable to access the garage because Defendants failed to provide them with a remote control. The Yaps' counsel requested the remote control again on July 14, 2026. MidPen provided the Yaps with a remote control later the same day, on July 14, 2026.

58. In the short time that the Yaps have had access to the garage and permission to park in the "public" ADA spaces, Mr. Yap has returned to the parking garage on at least six occasions to find that all the ADA spaces are occupied. Each time, he has had no option except to park on the street up to one block from Hall Square.

///

## VI. INJURIES

59. As a result of Defendants' discriminatory and wrongful conduct, Plaintiff Ofelia Yap has suffered emotional distress with attendant physical symptoms, including frustration, embarrassment, fear, pain, violation of civil rights, and loss of dignity. Plaintiff Joel Yap has suffered frustration, stress, inconvenience, and fear. He has spent countless hours advocating for a safe parking space so that he can effectively and safely care for his mother. As his mother's son and her caregiver, he feels responsible for her well-being. Defendants' conduct has caused him to suffer emotional distress. Accordingly, Plaintiffs are entitled to recover compensatory damages pursuant to the federal Fair Housing Act, California's Fair Employment and Housing Act, and related laws.

60. In doing the acts of which Plaintiffs complain, Defendants acted intentionally and with oppression, malice, and conscious or reckless disregard of Plaintiffs' fair housing rights. Accordingly, Plaintiffs are entitled to recover punitive and treble damages.

61. Unless enjoined, Defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and their pattern or practice of discrimination unless relief is provided by the Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## VII. LEGAL CLAIMS

### A. FIRST CLAIM

### VIOLATION OF THE FAIR HOUSING ACT

### [42 U.S.C. § 3601 ET SEQ.]

62. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

63. Defendants, directly and vicariously, are liable for the commission of the following discriminatory housing practices, in violation of the Fair Housing Act ("FHA"):

a. Discriminating in the rental of housing, or to otherwise make unavailable or deny, a dwelling to a renter because of disability, 42 U.S.C. § 3604 (f)(1);

b. Discriminating against any person in the terms, conditions, or privileges of rental

of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, 42 U.S.C. § 3604(f)(2);

c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, 42 U.S.C. § 3604(f)(3)(B)

64. Plaintiffs were injured by each of these discriminatory housing practices and are aggrieved persons as defined in the FHA, 42 U.S.C. § 3602 (i). Defendants committed each of the discriminatory housing practices described herein with intent or in reckless disregard of Plaintiffs' rights under the FHA. Accordingly, they are entitled to relief under 42 U.S.C. § 3613(c), including compensatory and punitive damages.

## B. SECOND CLAIM
## VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
## [CAL. GOV'T CODE § 12955 ET SEQ.]

65. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

66. Defendants, directly and vicariously, are liable for the commission of the following discriminatory housing practices in violation of the Fair Employment and Housing Act ("FEHA"):

a. Discriminating against any person because of disability, Gov. Code § 12955 (a);

b. Otherwise making a dwelling unavailable because of disability, Gov. Code § 12955 (k);

c. Discriminating by providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability, Gov. Code 12927 (c)(1);

d. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, Gov. Code § 12927 (c)(1);

e. Failing to engage in an interactive process regarding Plaintiffs' requests for

reasonable accommodations in good faith, Gov. Code § 12955; Cal. Code Regs., tit. 2, § 12177.

67. Plaintiffs were injured by each of these discriminatory housing practices and are aggrieved persons as defined by FEHA, Government Code § 12927 (g). As the direct and proximate cause of Defendants' violations of Gov. Code, § 12927 and § 12955, Plaintiffs suffered damages, including emotional distress with attendant physical injury, pain, loss of civil rights, frustration, difficulty, and embarrassment.

68. Defendants' actions and inactions as alleged in this complaint are in clear violation of Defendants' statutory duties and were done with the knowledge or reckless disregard of the fact that they would cause significant harm to Plaintiffs. Defendants' conduct was despicable, malicious, and oppressive as defined under Civil Code section 3294, and Plaintiffs are entitled to punitive damages.

69. Each of the Defendants was aware of the probable consequences of their conduct and deliberately failed to avoid those consequences and/or are vicariously liable pursuant to Civ. Code, § 3294, subd. (c).

70. Defendants' discrimination constitutes an ongoing violation under Gov. Code, § 12927, subd. (c)(1). Until the discriminatory policies and practices of each of the Defendants are enjoined, Plaintiffs will continue to be denied full and equal use and enjoyment of their housing and will suffer ongoing and irreparable injury.

71. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under Gov. Code § 12927, subd. (c)(1). Accordingly, Plaintiffs seek a declaration that Defendants have violated these subdivisions.

72. As the direct and proximate result of each of the Defendants' violations of Gov. Code, §§ 12955, 12955.8, subd. (b), Plaintiffs have suffered and continue to suffer emotional and physical pain and distress, exacerbated physical disabilities, loss of civil rights, frustration, difficulty, and embarrassment. As persons aggrieved by the Defendants' violation of FEHA, Plaintiffs are entitled to injunctive relief and damages, including punitive damages. (Gov. Code, § 12989.2.)

73. Accordingly, Plaintiffs are entitled to relief under FEHA.

### C. THIRD CLAIM
### VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT
### [CAL. CIVIL CODE § 51 ET SEQ.]

74. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

75. Defendants are business establishments within the meaning of the Unruh Act. *See Marina Point, Ltd. v. Wolfson,* 30 Cal.3d 721, 731 (1982).

76. Defendants have denied Plaintiff Ofelia Yap full and equal accommodations, advantages, facilities, privileges, or services in the operation of their business establishment by refusing to permit her to reserve and use a space in the parking garage. This constitutes:

a. Discriminating against tenants, and others similarly situated, because of disability,

b. Making a dwelling unavailable because of disability;

c. Providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability;

77. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

78. Defendants knew of Plaintiff Ofelia Yap's disabilities, and that Defendants' refusal to permit the Yaps to reserve a parking space in the garage caused them hardship. Defendants made affirmative choices that demonstrated their intention to discriminate based on disability, including but not limited to establishing parking policies or practices that discriminate based on disability, ignoring or constructively denying requests for reasonable accommodation from tenants, and refusing to permit Plaintiffs to access public, ADA spaces in the parking garage until counsel intervened.

79. Plaintiff Joel Yap is aggrieved within the meaning of the Unruh Act because he has been adversely affected by Defendants' discriminatory conduct and has a concrete and actual interest in the relief sought. *White v. Square, Inc.*, 7 Cal. 5th 1019, 1032 (2019).

80. Each of the Defendants was aware of the probable consequences of their conduct

and deliberately failed to avoid those consequences and/or are vicariously liable pursuant to Civ. Code, § 3294, subd. (b).

81. The nature of each of the Defendants' discrimination under the Unruh Civil Rights Act constitutes an ongoing violation. Plaintiffs remain without a reserved parking space in the garage. They reasonably and credibly fear that ADA spaces will be full when they need to park there, causing them to suffer injuries. Until the discriminatory policies and practices of each of the Defendants are enjoined, Plaintiff Ofelia Yap will continue to be denied full and equal use and enjoyment of her housing, and both she and Joel Yap will suffer ongoing and irreparable injury.

82. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under the Unruh Civil Rights Act. Accordingly, Plaintiffs seek a declaration that Defendants have violated these subdivisions.

83. Plaintiffs were injured by Defendants' violations of the Unruh Act and are entitled to all available relief as set forth in Civil Code § 52.

**D. FOURTH CLAIM**
**VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**
**[CAL. CIVIL CODE § 54, ET SEQ.]**
**[OFELIA YAP VS. ALL DEFENDANTS]**

84. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

85. Defendants violated the Disabled Persons Act ("DPA") by denying individuals with disabilities, including Plaintiff Ofelia Yap, full and equal access to a housing accommodation.

86. The DPA provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." (Civ. Code, § 54.1, subd. (b)(1).)

87. The DPA also provides that "[a]ny person renting, leasing, or otherwise providing

real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." (Civ. Code, § 54.1, subd. (b)(3)(B).)

88. Defendants violated the Disabled Persons Act ("DPA") by denying individuals with disabilities, including Plaintiff Ofelia Yap, full and equal access to a housing accommodation by:

a. Discriminating against Ofelia Yap because of disability.

b. Making a housing accommodation unavailable because of disability;

c. Providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability;

d. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

89. Plaintiff Ofelia Yap has been harmed and continues to be harmed because Defendants' refusal to provide her caregiver with a reserved parking space in the garage causes her to suffer physical and emotional distress, endangers her well-being, and exposes her to a potentially catastrophic accident. Defendants' failure to provide a parking space to Plaintiffs deprives Ofelia Yap of full and equal access to her dwelling. Accordingly, she is entitled to all relief afforded under the DPA.

90. Plaintiffs do not seek injunctive relief under Cal. Civ. Code § 55.

## E. FIFTH CLAIM
## NEGLIGENCE
## [CIVIL CODE § 1714]

91. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

92. At all relevant times herein, Defendants owned, controlled, leased, and operated Hall Square.

93. Defendants owe Plaintiffs a duty to operate Hall Square in a manner that is free from unlawful discrimination, and to educate and train their agents to fulfill that duty.

94. Defendants negligently violated their duty to Plaintiffs by engaging in discrimination against them based on their disability; specifically, by refusing to grant a reasonable accommodation to permit Ofelia Yap's caregiver to reserve a space in the parking garage.

95. As a further direct and proximate result of Defendants' negligent actions, Plaintiffs suffered damages, including emotional and physical distress, loss of civil rights, frustration, difficulty, and embarrassment. Plaintiffs are entitled to injunctive relief and damages, including punitive damages.

96. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under Civ. Code, §1714. Accordingly, Plaintiffs seek a declaration that Defendants have violated these subdivisions.

97. Plaintiffs have suffered damages and injuries as a result of Defendants' negligence. Accordingly, they are entitled to relief as set forth below.

**F. SIXTH CLAIM**
**BREACH OF THE IMPLIED COVENANT OF QUIET ENJOYMENT (TORT)**

98. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

99. The rental agreement between Plaintiffs and Defendants contains an implied covenant giving Plaintiffs the quiet use and enjoyment of their respective dwellings.

100. Defendants breached this covenant by engaging in the conduct alleged herein and are liable for the injuries incurred by Plaintiffs as a direct and proximate result of that conduct. Accordingly, Plaintiffs are entitled to relief.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment:

1. That declares that Defendants have engaged in unlawful acts or practices in

violation of each of the laws invoked in this complaint;

2. That enjoins Defendants, including their officials, agents, partners, employees, assignees, and all persons acting in concert or participating with them from committing any of the unlawful acts or practices alleged in this complaint;

3. That requires Defendants, including their officials, partners, agents, employees, assignees, and all persons acting in concert or participating with them, to undertake affirmative steps to remedy the effects of the unlawful acts or practices alleged in this complaint or proven in this action, including but not limited to granting Plaintiffs the right to reserve a parking space in the garage; implementing policies for timely considering and granting reasonable accommodation requests; and training staff in their obligations towards tenants with disabilities;

4. That awards compensatory damages to Plaintiffs, according to proof;

5. That awards punitive damages to Plaintiffs, according to proof;

6. That awards statutory damages, as provided by statute or ordinance alleged herein;

7. That awards attorneys' fees, costs, and expenses to Plaintiffs; and,

8. That grants all such additional relief to which Plaintiffs are entitled.

Respectfully submitted,

McGUINNESS LAW GROUP

Dated: July 27, 2026

*/s/ Liza Cristol-Deman*

Liza Cristol-Deman, Esq.
Attorneys for Plaintiffs